

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-26-00251-CV

**IN THE INTEREST OF J.M.M.**, S.A.M., and N.R.M., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-00782
Honorable Kimberly Burley, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Lori I. Valenzuela, Justice
                H. Todd McCray, Justice

Delivered and Filed: August 5, 2026

AFFIRMED

In seven issues, appellant M.R.M. ("Father") appeals the trial court's order terminating his parental rights to his children, J.M.M. (born 2018), S.A.M. (born 2020), and N.R.M. (born 2021), and appointing the children's mother, K.N.O. ("Mother") as their sole managing conservator.[1] We affirm the order of termination.

### BACKGROUND

In May of 2024, the Texas Department of Family and Protective Services ("the Department") removed the children due to domestic violence between Mother and Father and

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and pseudonyms to refer to their parents. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

because "mom and dad were living out of a vehicle. They didn't have stable housing for the children." Mother "tested positive for THC, and [Father] tested positive for methamphetamines, amphetamines and THC." The Department placed the children in foster care and filed a motion to terminate both Mother's and Father's parental rights. Father was incarcerated throughout this case.

Beginning on November 3, 2025, the parties tried the Department's termination petition to the bench. By the first day of trial, the Department had changed its permanency goal for the children to reunification with Mother and termination of Father's parental rights. It asked the trial court to approve steps that would lead to a monitored return of the children to Mother's custody. The children returned to Mother's home on December 22, 2025, where they remained for the rest of this case. The trial then continued on January 13, 2026, and the evidence presented that day focused primarily on Mother's and the children's progress after reunification. The parties reconvened for the third and final day of trial on March 6, 2026.

During the three days of trial, four witnesses testified: the original caseworker, Videlia Acosta; the then-current caseworker, Michelle Villarreal; Father; and Mother. On March 20, 2026, the trial court signed a final order that: (1) appointed Mother as the children's sole managing conservator; (2) dismissed the Department as the children's conservator; and (3) terminated Father's parental rights pursuant to section 161.001(b)(1)(E), (N), (O), and (P) and made findings that termination of Father's parental rights was in the children's best interest. Father timely filed this appeal.[2]

---

[2] Although Mother is the children's sole managing conservator, she has not entered an appearance in this appeal.

**ANALYSIS**

***Section 263.4011***

In his first issue, Father argues the trial court lost jurisdiction over this proceeding because it did not comply with section 263.4011 of the Texas Family Code. Section 263.4011 provides that in a parental-termination suit, "the court shall render a final order not later than the 90th day after the date the trial commences." TEX. FAM. CODE § 263.4011(a). This 90-day deadline "for rendering a final order . . . is not tolled for any recess during the trial." *Id.* § 263.4011(b). The court may extend the deadline for good cause, but it must hold a hearing on that issue and make its finding in a written order that specifies both the grounds for and the length of the extension. *Id.* § 263.4011(c). "A party may file a mandamus proceeding if the court fails to render a final order within the time required by" section 263.4011. *See id.* § 263.4011(d).

Here, while the trial commenced on November 3, 2025, the trial court did not sign a final order until March 20, 2026. Accordingly, the trial court did not comply with section 263.4011. However, the Department argues Father did not preserve this error for our review because he did not raise it in the trial court. We agree. We have previously held that section 263.4011's 90-day requirement is not jurisdictional. *See In re T.D.*, No. 04-24-00185-CV, 2024 WL 4177965, at *8 (Tex. App.—San Antonio Sept. 13, 2024, no pet.) (mem. op.). Because the 90-day deadline is not jurisdictional, a complaint about a trial court's failure to comply with that deadline is waived unless the complaining party asserted a timely request, objection, or motion in the trial court. *See id.* While we agree with Father that section 263.4011's deadline is mandatory and the trial court did not comply with that mandatory duty, Father did not assert this complaint until he filed his brief in this appeal. Accordingly, he has not preserved this issue for our review, and we do not reach it. *See id.*

***Sufficiency Issues***

In his second, third, fourth, and fifth issues, Father challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under Texas Family Code section 161.001(b)(1)(E), (N), (O), and (P). In his sixth issue, he argues the evidence was legally and factually insufficient to support the trial court's finding that termination was in the children's best interest.

To terminate parental rights pursuant to Family Code section 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001(b), 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.).

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *In re J.P.B.*, 180 S.W.3d at 573. Where, as here, the trial court acts as factfinder in a bench trial, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citation omitted). We therefore defer to the trial court's judgment regarding credibility determinations. *See id.*

*Statutory Termination Grounds*

Ordinarily, when the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.). However, because termination under subsections (D) or (E) may have implications for a parent's parental rights to other children, we must address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019) (per curiam). Therefore, we will consider Father's sufficiency argument as to subsection (E) before we turn to his challenge to the other predicate findings.

A. <u>Applicable Law</u>

Subsection (E) allows a trial court to terminate a parent's rights if it finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" TEX. FAM. CODE § 161.001(b)(1)(E). "Endangerment means to expose to loss or injury, to jeopardize." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (E), the trial court determines whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See id.* "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Courts may consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4–5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

B. <u>Application</u>

"'Due process requires meaningful appellate review of orders terminating parental rights.'" *In re Z.R.M.*, 665 S.W.3d 825, 829 n.6 (Tex. App.—San Antonio 2023, pet. denied) (quoting *In re G.M.*, No. 04-19-00080-CV, 2019 WL 3432088, at *4 (Tex. App.—San Antonio July 31, 2019, pet. denied) (mem. op.) (Watkins, J., concurring)). Recognizing our duty to perform this review, we have "repeatedly expressed concerns about underdeveloped records in parental termination appeals." *In re Z.R.M.*, 665 S.W.3d at 829 n.6 (listing cases).

The witness testimony and argument of counsel regarding Father's conduct comprises less than 30 pages of the three-volume, 86-page reporter's record. The Department did not present any exhibits. Father's conduct was briefly discussed on the first day of trial, but the court expressly recognized that "the testimony would be very limited with regards to" him that day due to unspecified problems with arranging his participation from prison. The second day of trial focused almost entirely on the monitored return of the children to Mother; again, Father was discussed only briefly. While the parties were scheduling the third and final day of trial, the Department announced that it believed it would only need an additional 25 minutes to present its remaining evidence regarding Father. The reporter's record of the final day of trial is 34 pages long, and approximately half of that slim volume contains evidence and argument regarding Father's conduct.

We remind both the trial court and the Department that while they are no doubt well-acquainted with the full history of the proceedings in this and other parental termination proceedings, we are not. The only evidence we have before us comes solely from the reporter's record of the three days of trial. And in this case, the reporter's record appears to show that the trial court severed Father's relationship with his children based on less than 30 minutes of

testimony. Furthermore, it did so based on subsection (E), a predicate ground that can be used to justify termination of his parental rights to other children in future proceedings. *See* TEX. FAM. CODE § 161.001(b)(M). We are thus once again charged with evaluating the "traumatic, permanent, and irrevocable" destruction of a parent-child relationship based on a severely underdeveloped record. *See In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003) (discussing "the risk of erroneous deprivation" inherent in parental-termination proceedings); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) ("[I]nvoluntary termination of parental rights involves fundamental constitutional rights. . . . This natural parental right has been characterized as essential, a basic civil right of man, and far more precious than property rights.") (internal quotation marks omitted). Nevertheless, after reviewing this underdeveloped record under the required standard of review, we have no choice but to hold that the record is legally and factually sufficient to support the trial court's finding under subsection (E).

"Evidence of domestic violence is relevant to endangerment, even if the violence is not directed at the child." *N.K. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00028-CV, 2022 WL 2673236, at *6 (Tex. App.—Austin July 12, 2022, no pet.) (mem. op.). The Department presented evidence that Father and Mother engaged in domestic violence in front of the children on more than one occasion. Father did not dispute that these incidents occurred, and he agreed that he "messed up in the past." Although there was no evidence that any violence was directed at the children, the trial court heard evidence that the oldest child, J.M.M., remembers the violence and "is afraid of dad."

In his brief, Father questions the trial court's determination that this evidence of domestic violence was sufficient to terminate his rights but was insufficient to prevent Mother from being appointed sole managing conservator. He correctly notes that the evidence showed he and Mother

"were both aggressors in this situation." The evidence also showed that as of the first day of trial, J.M.M. was afraid of "going home and seeing the domestic violence between his mom and dad. He is terrified that they will start fighting again. . . . He doesn't want to see that anymore in the home." Caseworker Villarreal testified on the first day of trial that J.M.M. experienced "a small regression" when he first learned he would be returning to Mother's custody.

However, there was no direct testimony that the children were afraid of Mother herself. Additionally, Mother completed all of her services, including those related to domestic violence, and she articulated plans to keep herself and the children safe from future violence. The trial court also heard testimony on the second day of trial—*i.e.*, after the children returned to Mother—that all three children were "doing really good" and "seem very happy." Villarreal testified that Mother had "learned from her violence course and her parenting class" and "demonstrate[d] behavioral change." On this record, we cannot agree with Father's implication that the domestic violence evidence was equally damning against both parents.

Furthermore, Father was incarcerated on May 7, 2024, approximately a week before the Department obtained temporary conservatorship over the children. He remained incarcerated throughout this case, with a projected release date of June 14, 2027 and a possibility of release as soon as September 2026. "Criminal activity that exposes a parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child." *In re R.L.L.*, No. 04-18-00240-CV, 2018 WL 6069866, at *9 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.). While a parent's incarceration, standing alone, is not sufficient to support an endangerment finding under subsection (E), "incarceration does support an endangerment finding if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child." *In*

*re J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021) (internal quotation marks omitted). "A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment." *Id.* at 313.

Father testified that his incarceration resulted from his "past criminal activity for methamphetamine usage and—in 2019, 2018 and 2017, and also fraud behavior, going on 20—or, 15 addresses, and I.D. info and credit and debit possession/usage." This testimony established that Father's criminal behavior began before the children were born and continued through at least J.M.M.'s birth in 2018. The trial court could have rationally found that this evidence "shows a pattern of escalating [criminal] conduct, not an isolated incident." *In re J.F.-G.*, 627 S.W.3d at 315; *see also In re N.L.S.*, 715 S.W.3d 760, 765 (Tex. 2025) (identifying the "drug possession" and "credit card abuse" offenses at issue in *J.F.-G.* as "serious crimes" that could support an endangerment finding). The trial court also could have found that this past conduct exposed the children to the risk of "a life of uncertainty and instability[.]" *In re K.J.G.*, 2019 WL 3937278, at *5.

Additionally, "[a] parent's lack of contact with a child and his or her absence from the child's life endanger the child's emotional well-being." *In re Y.W.*, No. 02-22-00334-CV, 2022 WL 17841830, at *6 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op.). Here, Father's incarceration resulted in his absence from the children's lives for more than two years. Because the children were 4, 6, and 7 years old at the time of trial, a reasonable factfinder could have considered the length of that absence to be significant and relevant to the endangerment ground. TEX. FAM. CODE § 161.001(b)(1)(E); *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied).

Finally, the trial court heard evidence that prior to Father's incarceration, he and Mother were both using illegal drugs and living in a vehicle with the children.[3] Based on that evidence, the trial court could have reasonably inferred that "Father's difficulties in providing shelter and support for his three very young children were related to his drug use." *In re R.R.A.*, 687 S.W.3d 269, 279 (Tex. 2024). The trial court also could have concluded that this evidence "exemplif[ied] risks that a pattern of drug use can create" and supported an endangerment finding. *See id.*

When viewed through the applicable standards of review, the evidence described above would permit a reasonable factfinder to form a firm belief or conviction that Father engaged in conduct that endangered the children's physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(E). As a result, the evidence is both legally and factually sufficient to support the trial court's endangerment finding under Texas Family Code section 161.001(b)(1)(E). *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We therefore overrule Father's second issue. Because we have concluded the evidence supports the subsection (E) finding, we need not address Father's third, fourth, and fifth issues challenging the remaining predicate findings. TEX. R. APP. P. 47.1; *In re D.J.H.*, 381 S.W.3d at 611–12.

*Best Interest*

In his sixth issue, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interest.

A. Applicable Law

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In*

---

[3] The evidence showed that marijuana was the only drug Mother tested positive for when the children were removed. Caseworker Acosta testified that by the time of trial, Mother had addressed her drug use and was "drug testing negative for the Department, both hair and UA."

*re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Department has the burden of rebutting this presumption with clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. "[T]he best interest standard does not permit termination merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (internal quotation marks omitted). To determine whether the Department satisfies its burden, the Texas Legislature has provided several statutory factors[4] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[5] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding does not require proof of any particular factors. *In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest[.]" *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that

---

[4] The statutory factors include: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[5] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

proves a statutory ground for termination may also be probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

B. <u>Application</u>

Much of the evidence described above in our discussion of the endangerment finding, particularly the evidence regarding Father's drug use, Father and Mother's history of domestic violence, and J.M.M.'s fear of Father, is also relevant to the best interest finding. *See In re C.H.*, 89 S.W.3d at 28; TEX. FAM. CODE § 263.307(b)(5) (trial court may consider whether child is fearful of living in or returning to the home); TEX. FAM. CODE § 263.307(b)(7) (trial court may consider history of abusive or assaultive conduct by family); TEX. FAM. CODE § 263.307(b)(8) (trial court may consider parent's history of substance abuse). Because all three children were very young, the trial court could have found that they were uniquely vulnerable to harm from the conduct that brought them into the Department's care. *See* TEX. FAM. CODE § 263.307(b)(1); *In re B.D.A.*, 546 S.W.3d 346, 361 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

In addition to the evidence described above, Mother testified that she believed it was in the children's best interest for Father's parental rights to be terminated. Villarreal agreed, testifying that she did not believe Father would be able to meet the children's emotional needs because of his "continued criminal involvement." *See Holley*, 544 S.W.2d at 371–72. She added that Mother "wants to protect" the children and that Mother did not feel the children "would be safe around

[Father], due to his continued involvement with his criminal history." She noted that the children's fear of Father was "one of the issues that has been talked about" during the family's therapy sessions. Villarreal also testified that "there were some concerns about sexual abuse" regarding Father's brother. Because Father identified his brother as his only support system, the trial court could have concluded that testimony was relevant to a best interest analysis. *See* TEX. FAM. CODE § 263.307(b)(13) (trial court may consider whether adequate social support system is available to the child).

After reviewing the evidence under the applicable standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in the best interest of his children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold that legally and factually sufficient evidence supports the trial court's best interest finding and overrule Father's sixth issue.

### *Conservatorship*

In his seventh and final issue, Father asks us to review the portion of the trial court's order regarding conservatorship of the children. We review a trial court's conservatorship rulings for abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). In making a conservatorship decision, a trial court has broad discretion in determining a child's best interest. *In re J.J.R.S.*, 607 S.W.3d 400, 404 (Tex. App.—San Antonio 2020), *aff'd*, 627 S.W.3d 211 (Tex. 2021). We may not reverse a trial court's conservatorship ruling unless it was arbitrary or unreasonable. *Id.*

The Texas Family Code requires a child's parent to be appointed managing conservator "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE § 153.131(a). "It is a rebuttable presumption that the

appointment of the parents of a child as joint managing conservators is in the best interest of the child." *Id.* § 153.131(b). Here, however, we have already concluded the evidence was legally and factually sufficient to support the trial court's finding that terminating Father's parental rights was in the children's best interest. Because the standard of review "is more stringent for termination decisions than for those regarding conservatorship," we cannot say the trial court abused its discretion by refusing to appoint Father as a managing or possessory conservator. *See In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *3 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.) (internal quotation marks omitted).

We overrule Father's seventh issue.

## CONCLUSION

We affirm the order of termination.

Lori I. Valenzuela, Justice